20-7081 Robert Weissman v. Nat'l Railroad Passenger Corp doing business as Amtrak Mr. Joshi v. Balance, Ms. Amundson v. Emily Good morning, counsel. Counsel for appellant, you may proceed. Thank you, your honor. Good morning. You may have pleased the court. I'm Nandan Joshi for Plaintiffs Patrick Llewellyn and Robert Weissman. With the court's permission, I would like to reserve three minutes for rebuttal. Plaintiffs are Washington, D.C. residents who use Amtrak's rail service for business travel. They filed this action to obtain rail tickets that would allow them to use Amtrak without entering into an arbitration agreement that Amtrak has made a mandatory term and condition of providing rail service. Counsel, can I ask a question at the outset on this little puzzle? Before we get to standing, what is your merits claim? The merits claim is basically there's a statutory ultra-virus claim and constitutional claim. But the core of the claim is that as a component of the federal government, Amtrak cannot condition access to its services on a waiver of constitutional rights. So it's a non-constitutional condition. That would assume there's a waiver. Yes, that would assume that the arbitration agreement operates as a waiver of plaintiff's rights to go to court rather than to non-binding private arbitration. If that was not so, if there was no waiver of your right to challenge arbitration should it come up, then what consequence is that if you're wrong on that? So if we're wrong on that, we would lose on the merits. But the court below obviously did not reach the merits because the district court believed that being required to enter into this contract, which is the arbitration agreement, is not itself a concrete harm. You're not taking the position that the arbitration provision is per se illegal, are you? No, we do not take the position, for example, that the government cannot enter into arbitration agreements. Our theory is that, our claim is that the government cannot condition access to rail service or any other service, for example, Social Security benefits or veterans benefits on a waiver of constitutional rights. Why do you, I'm puzzled. Why is there a waiver? I don't get it. I don't see how buying the ticket constitutes a waiver. I'm really mystified. I don't see any reason why you couldn't challenge the arbitration process if you ever got into that situation. Well, the arbitration agreement here is set up under the federal arbitration act. So that means arbitration is a matter of consent. If plaintiffs want to ride Amtrak, they have no choice but to give their consent to this arbitration. It's not an optional feature they can choose or refuse and still ride Amtrak. But if it was illegal, you could certainly challenge it at the time it was imposed on you when you had a claim. Well, as we note in our brief, it's a little uncertain. I mean, the federal arbitration act was not, I think, enacted with the contemplation that the government would use it against individuals, against the public. So it is a little uncertain whether we would be able to challenge it later if the plaintiffs were to give their consent. But of course, counsel, we have to assume the merits, that you would be successful on the merits, in order to test the threshold question of standing. Am I right about that? No, that's absolutely correct. And that's the problem with the district court's standing analysis. If the court were to affirm the district court, the plaintiffs would be forced to make the choice. They filed this lawsuit not to make, which is, do I ride Amtrak or do they ride Amtrak? And consent, give their consent to this arbitration regime, or do they avoid Amtrak altogether? All right. Well, tell me why. Why is that a forced choice? Maybe you can sort of step back and take us through your argument about standing and the injury that you think is occurring in this case. Sure. Well, it's a forced choice because they don't have a option. I mean, like I mentioned, Amtrak cannot impose arbitration on the plaintiffs unless the plaintiffs consent. The plaintiffs do not have the option of refusing consent and still taking Amtrak. So Amtrak, if they are adamant that they will never sign on to the arbitration agreement, their only choices for intercity business travel is to take some other mode of transportation. But you're sort of framing it in a way that is different from how we ordinarily think about these things. Can I step back and kind of ask you, what is your client's interest, concrete interest, in riding a train that does not have a ticket attached to a mandatory arbitration provision? Do they have an interest in that that is something we've recognized? Well, you have recognized over decades consumers have an interest in products and services. For example, the Consumer and Consumer Federation of America had an interest in purchasing Internet access service on terms that the consumer would have liked. The Chamber of Commerce and Chamber of Commerce versus SEC had an interest in purchasing mutual funds. All right. But state your interest in the same way. It's an interest in acquiring a product on my own terms. We said that. Yes. Yes. I mean, that was essentially Orangeburg versus FERC. The municipality there could acquire wholesale electricity. That wasn't an issue, but the municipality wanted better terms that they thought they were entitled to. The council in Orangeburg really reduced down, although it sounds complicated, it really reduced down to the proposition that a South Carolina company would have to pay more for power from the North Carolina company. So it was a clear economic injury. So that's correct. And what we have here is it's not a price economic injury, but it is a cost on to the planet. So, for example, if they want to travel to New York on Amtrak before the arbitration commission, they would say pay $100 for a ticket. Now they have to pay $100 plus waive a right, which is the right to go to court. If we were to conclude that there's no merit to the proposition, there's a waiver. Because my colleague is absolutely right. We have to clearly assume the merits before we decide the standing. But the Supreme Court has said if the merits are so weak, you could actually decide that too, right at the outset, as an exception to steal company. Now, so if we conclude there's no merit at all to the proposition that your client waives his right to challenge the arbitration agreement in the event there is a circumstance where it is imposed on him, what then happens to your standing? So I think there are two issues there. One is what the district court decided, which is that there's no concrete harm at all. The second question, which was not an issue and has not been limited. I'm not talking about standing now. I'm talking about the merits. If we conclude there's no merit to the proposition that your client waived his right, but just by taking the ticket to challenge a mandatory arbitration at the time, an issue arose. If we said there's no merit to that, then what's the consequence for standing? So, well, if you conclude there's no merit to it, then that's a merits decision. If you conclude that the merits are, I don't agree with this, but the merits are so frivolous that... That's right. You recognize that we can decide that based on the Supreme Court. And you were a little fuzzy about the notion that there's a waiver here just by buying the ticket. And I, for the life of me, couldn't understand why there's a waiver. If I bought the ticket and subsequently there was a dispute between the railroad and me, and the railroad insisted on going to the arbitration, I couldn't imagine why I couldn't challenge that at that point on the ground that it was an illegal clause. Well, it's certainly uncertain. We think it's uncertain whether that would hold up at a later date. Once plaintiffs consent to the ticket, they can't challenge the fact that they made the arbitration. They can challenge the grounds that the arbitration agreement is illegal. Right. But under the severability principle that the Supreme Court's announced, the plaintiffs can only challenge the four corners of the arbitration agreement separate from the rest of the contract. Now, does that mean the plaintiffs can challenge the condition? So I'm not sure. Certainly, Amtrak has put in no cases that suggest that's a viable challenge in response to our explanations why Section 2 of the FAA and the severability principle and the delegation clause really impose hurdles on the plaintiff's ability to challenge the arbitration. I see the point. But the key to your whole case is that you're forced to waive the right to challenge. Just by buying the ticket, you're waiving the right to challenge the arbitration provisions in the future. If we thought that was without any merit at all, what does that do to your standing? So I think that's slightly... The waiver is the waiver of the right that they possess right now to go to court. That's where we can tell it's protected by the Constitution. So what the arbitration agreement does is force them to agree in advance that they will not... They will settle their dispute in some other way. Okay. Counsel, I'm sorry. Can I just jump in? Because I know that you're sort of the core of the dispute is overstanding, given what the district court held. And so what I'm trying to understand is the suggestion that you've made that there is some kind of a tangible or concrete cost anytime one's preferred conditions are not offered or don't exist. And I'm trying to test that. So what if rather than the arbitration provision, the plaintiffs would like to ride Amtrak trains with blue armrests rather than red armrests? And Amtrak does not have any blue armrested trains. And the plaintiffs say, I am being forced to ride in a car with an armrest that is not my preferred color. Do they have a concrete injury? Because it's a cost, I suppose, to have to do that when they don't want to do that. But is that your argument? So I think that the... I think, well, it is a potentially an injury that Congress can elevate into a concrete harm. The cases say an injury itself is not sufficient if it's not legally cognizable. And so if it's a situation like that, where the specific interest being put forward does not have a legally cognizable basis... So what is the legally cognizable basis for suggesting that having to buy this ticket with an arbitration provision in it is an injury? Well, it's a contract. It's a binding contract on the plaintiffs. It's a purely economic matter. It is a cost on them. They used to have a right that they no longer, if the contract is enforced, would no longer have. And so, I mean, I don't think anything is this far removed from a situation of like an aesthetic injury, like the armrest example that you gave. I mean, this essentially reduces the value of the ticket to them because now... In their own minds, it doesn't reduce the value in the sense that they pay more physically in terms of money, right? They're just disappointed. They're sad. Or they're afraid of the risk that they might eventually have to arbitrate. Well, the risk of having to arbitrate is essentially economic in nature. This is not just a pure question of fear. If, for example, Amtrak offered a second ticket option that said you can pay $5 more, but if you decline the arbitration agreement, no one would question, I think, that $5 is an economic injury. The fact that they only offer one option to plaintiffs, which is take it or leave it, accept this contract term, or don't ride our trains, is just as much of an economic injury to plaintiffs. But does it have to do with the nature of the term? Because it seems to me that every consumer agreement can be reduced to a contract, so it's really not substantively different. So fine, Amtrak puts in its contract, you have to accept that we have red armrests, and the person says, but I don't want that, right? So is it the fact that you're saying it's arbitration in the contract that is creating the harm? Well, certainly I think this is the easy case, as it was in Orangeburg, in that it is the terms of a contract that has a value to consumers. Well, you're focusing on the language in that case involving term, the use of the word term. But in fact, the holding in this case is that Orangeburg was going to have to pay more money. Yeah, that's correct. So you can't leverage that, as my colleague is pointing out, to any term anywhere. Let me give another hypothetical. Suppose Amtrak in its ticket states that if you go into the quiet car and you use a telephone, you will lose your right to travel Amtrak for three months. Can you challenge that on the grounds that that's an unfair term? I would think so. That seems like a free speech challenge. They're restricting your speech. You have a right to talk in the quiet car? Well, whether you have a right or not is a merits question, but I think the standing there is pretty apparent. So you would have standing? Hold on. I have two questions at once. Excuse me. Go ahead, Judge Silverman. Look, the point is, is it not that we wouldn't know at this point whether, let's suppose the term had said you would lose your right to travel on Amtrak for three months unless you had adequate excuse for speaking. Is your view that you could challenge that now? Or would the question be, what would happen if there was a determination subsequently that either there was or was not good reason to speak as an emergency? So I think if the plaintiff had put in a declaration that says they intend to speak and they have a legitimate fear that Amtrak would enforce this against them, that does sound like the merits would be a First Amendment question, but the standing is the violation of the constitutional right. May I make one other point? You would agree that rightness and standing tend to intertwine. Both of you in your briefs recognize that. Sometimes the concepts overlap, don't they? Yes. No, we don't. We don't dispute that. Let me go and tell you about, you make a very strong argument that there's no way to distinguish the core of a product from something ancillary, which is what my colleague was pushing. And me too, with respect to something ancillary. Well, I call your attention to Abbott Laboratories and toilet goods. And it was, to be sure, a rightness case, but it was constitutional rightness, really. And you can treat that as standing as well. And in Abbott Laboratories, the Supreme Court and in toilet goods distinguished between primary conduct and something that was ancillary. Toilet goods was inspection regime, whereas Abbott Laboratory was the label on a can. So the label on a can affected primary conduct. If you use that analogy over in this situation, wouldn't you conclude that the real product here is the transportation on Amtrak? That's the product. And the arbitration is like the toilet goods question of ancillary inspections. I would not, I mean, I would not consider any term that's mandatory. Plaintiffs do not have the right to opt out of the ancillary because that is part of what they are purchasing. Aren't all terms, aren't all ticket terms mandatory because you're not negotiating all of the conditions that are in the ticket, right? Right. But they don't all rise to a marriage challenge. How do we know? In other words, how do we know which ones give you grounds to claim injury when you say, I don't want to do that thing and which ones don't? So I think the way to think about this is because concrete injury is an absolute article three floor. You could think about it in the sense of is this type of activity something that Congress cannot regulate because that is a grant to consumers and a cause of action. Because once you once you declare something a concrete injury, then it's out of Congress's hands. For example, Congress wants to prohibit arbitration agreements and employment contracts. If the district court's right, that's an ancillary term. Injured, injured job applicants can't sue unless they enter into the contract and have an imminent arbitration proceeding in front of them. That's where I'm where I'm I'm desperately trying to isolate the different factors here. So to me, cause of action and the merits are different than injury for this from the standpoint of determining whether or not you have an injury, in fact, for Article three purposes. You seem to be suggesting in your briefs and in your argument here this morning. That you are injured in a concrete way. If the desired product that you would like to purchase does not exist, if you or is not being offered, it's enough to say I want an Amtrak ticket that doesn't have an arbitration agreement or that doesn't. You know, I want to ride an Amtrak that has blue seats, not red seats, whatever it is you say. If that is not being offered, you're injured from the standpoint of Article three. And I don't understand that. Sure. And I get your point, Your Honor. So I think standing injury and the merits are like 99.9% separate, but there is this very sliver of overlap that the cases talk about where they recognize the existence of a de facto concrete injury that is legally inadequate. Unless Congress has elevated that injury into a cognizable injury. And I can read you from the Supreme Court's last recent decision in trans unions, this last term. Congress may elevate the status of legally cognizable injuries, concrete de facto injuries, if that were previously inadequate at law. So one of the things that I'm finding confusing is you're relying on a line of authority from this court, which talks about injury in the context of action by a federal agency. Here, the Supreme Court has said clearly Amtrak is not a government agency. Therefore, from my point of view, we're treating Amtrak as a private corporation for purposes of the type of individual claim of injury. Now Congress has authorized Amtrak and created Amtrak for a specific purpose, but it left details to Amtrak. And the discussion Judge Jackson has been having with you, you seem to resist on the idea that if you don't want the product as it's being offered in the market, that's an injury for purposes of Article 3. And I think our questions are getting at is we're trying to understand, I suppose, A, how under our authority, you have the type of injury that is required, and B, if you don't, then what authority are you relying on? And I understand your point. Giving up the right to go to court is not of the same nature as objecting to the color of arm seats or chairs. But I don't think you've persuaded me at this point that either, assuming our authority applies in this context, what we have required in defining the product and the cost, it seems to me is consistent with what the Supreme Court was talking about in the cases that Judge Silberman was just discussing with you. And I think that Judge Jackson was bringing in. And I understand you don't agree, but the question is, how does the court write an opinion consistent with our jurisprudence and the Supreme Court to get you what you want? And I haven't heard that answer yet. And we haven't even talked about imminence. Sure. Well, I think one example might be the Chamber of Commerce case. So that was an APA case where the Chamber sued the FCC for their independent director rule that was imposed on mutual funds. And this court held the Chamber had standing, even though they were not directly regulated, because they could not get access to that product. The reason they have standing is because they suffered a concrete de facto injury in the unavailability of that product. And did you happen to read the second case involving Chamber of Commerce, which came back again, which Judge Rogers wrote? Did you read that case? I'm aware of one Chamber of Commerce case that was addressed in the briefs. Yes, but then there's a second one. The case came back up to the court. And Judge Rogers explained the standing holding in the first case as based on an economic injury that the Chamber of Commerce, as the investor, was deprived of certain mutual fund possibilities of purchase, particularly small ones, because of the regulation. And as an investor, if you're deprived of the opportunities to invest in mutual funds because of this regulation, you're injured because you want to have a broad range for your portfolio. And indeed, she pointed out also, there are direct expenses. So she explained Chamber 1, I thought, in a brilliant fashion. If you'll forgive me. My apologies. I don't think any of the briefs cited that. So I can't speak to Chamber 1. I'm happy to... Chamber 2. Let's just assume that our understanding of Chamber 1 is that it turned on the increased cost. So the product was no longer available. All right. And so part of my question is, what is the cost to your client when it doesn't even allege that it potentially has a claim, much less that it has a claim that's definite in the foreseeable future? Nor that, as Judge Silverman was exploring with you, that you would be barred from making the constitutional argument you're making now. So I think the cost is a purely, it's a contractual cost. It is a binding agreement. If the court says that individuals can be bound and not have standing, it can be forced to consent to being bound by a contract term and not have standing. That would be the holding that would, I think, if you were to affirm the district court's decision. But there's no indication in your briefs or complaints or no indication, no law that you cite for the proposition that by buying the ticket, you've waived your right to contest arbitration. And if there was an incident in which there was a dispute. The waiver is the waiver of the right to go to court. Where I don't see that. That's what private arbitration is. You go to private arbitration. But if you claim that the arbitration clause is illegal, you could always make that claim in the future. Isn't that right? You said there's, you've waived the right to make that claim by buying the ticket. I think that's absurd. Under the arbitration agreement, at a minimum, if we make that argument, if we're allowed to make the argument, the arbitration agreement is illegal, even considering the severability principle, which doesn't look to the, which only looks to the four corners of the arbitration. That would still go to the arbitrator under the delegation clause. Not necessarily, not necessarily. If you argued that it was the, the arbitration clause was illegal. And you couldn't be concluded, it couldn't be concluded that you waived your right to make the challenge. So I think that's almost a frivolous argument. And if it is a frivolous argument, then we can dispose of this as the Supreme Court has advised us without, without assuming the merits. In other words, my colleague, Judge Jackson is quite correct. We must always assume the merits when we turn to standing, unless the merits are frivolous. Well, can we, can we talk a little bit about eminence as a sort of separate standalone traditional criteria. So why is it that even if you have a protected interest in not being forced to read to arbitration, arbitration rather than trial. Why is that an eminent injury in a situation like this, where, as Judge Rogers pointed out, there's no indication that your clients have a current claim that could either go to arbitration or trial. And they would have, you know, such a claim would have to arise and then the Amtrak would have to invoke the provision and then they would perhaps be in a situation in which they would be forced to arbitrate. How could that be eminence in any meaningful way? Well, it's eminent in the sense of plaintiffs do not want to give their consent. They have to, they have to consent before that whole regime even applies to them and they do not want to do that. Now, if they don't want to do that, then that's, that's something they have to make a decision at the time of trial. You're saying the harm is being forced to give their consent and it's eminent because they're being forced to give their consent right now. Right. So the arbitration condition were optional. You buy a ticket, you have this option of, they could reject the arbitration agreement and then write Amtrak, you know, free and clear. They have, they have control over their own legal destiny. I just feel like your theory, I hear you that this is important because it's arbitration and that's something that Congress may have elevated or whatnot, but your theory of injury seems to undermine and undo all of the standing limitations. Because in every case, one could say, we want the state of the world to be different than it is as a result of the person, of the defendant's action. And it's different right now. So we have an eminent injury. I don't understand how there's a limitation. No, I don't think so. I mean, let me give an example, perhaps something that I think everyone agrees is an injury, which is higher prices, right? So if you're gas, the gas price of gas goes up 25 cents. That's a concrete injury on drivers. They have to pay more for gas. I don't think anyone would disagree with that. But you can't just go into court and say, I prefer lower gas prices, because that's not an injury that is legally cognizable under any federal law. Now, Congress passed a statute that said the price of gas has to be $3 and consumers can sue if it goes higher. Or if a consumer says the price of gas is higher because there's a violation of the antitrust law and there's a price fixing agreement. That same price increase that was inadequate before now becomes legally cognizable. So here's what I'm worried about. I'm worried about your merger of the merits and this issue of injury. The way that you framed this now has an injury not in case A because the person doesn't have a legally protected interest, meaning they don't have a claim, right? They couldn't win if they went to court because there's no cause of action or actual problem with having gas prices be higher. But in World B, they do have an injury because their claim is meritorious. And I've never understood those two to be connected in that way, such that you can claim an injury because you say we're so right about the ultimate legal claim that we would like to make. So, yeah, I apologize if I was unclear. The argument isn't that the plaintiff has an injury if the claim is meritorious. The plaintiff has an injury, for example, for higher gas prices if the plaintiff can tie that injury to a legally cognizable, something that, you know, it's protected under law or under the Constitution in some way. It's not a huge barrier, but it does prevent, you know, plaintiffs from going to court and saying, I don't like the state of the world, which is the concern you were expressing. But you do have to, this court will not see those situations too often because any lawyer is going to tie an injury to a claim for relief. And so the question of legal cognizability is not, almost never gets litigated as far as I've seen. However, it does prevent plaintiffs from, you know, simply going to court, having standing because they're dissatisfied with the options available in the marketplace. Let me go back to one point. Suppose your client did not waive his right to challenge arbitration by buying a ticket. Would you have an injury? Our clients have an injury because of requiring... Follow my question. Suppose buying the ticket did not constitute a waiver of your right to challenge arbitration should the event arise. Suppose that was true. Do you have an injury? I would say yes. I think...  Well, if the court concludes, no, yes, because it's still a contract. He's still, they're still signing on the dotted line. And that has some meaning. But your argument is that's unconstitutional. That's one of your arguments. I think it'd be helpful if we could hear for counsel from, for Apolline, and then we'll give you some rebuttal time.  Counsel for Apolline. Good morning, Your Honors. May it please the court, Jessica Ring Amundson for Apolline Amtrak. Your Honors, for the reasons that you've been discussing, the district court correctly determined that plaintiffs do not have standing to raise their challenge to the arbitration clause. Unless and until Amtrak seeks to enforce the arbitration clause against plaintiffs, they simply do not have the actual and imminent injury necessary to satisfy Article 3. Let me follow up, counsel, with just what I was asking your colleague, your opponent. Would you agree that any person buying the ticket with the arbitration clause does not waive his or her right to challenge arbitration at the time it is invoked against them? Your Honor, I would agree. And in fact, that's what every case that is cited in our briefs that has considered this question has held. So the Supreme Court in Monsanto, the Seventh Circuit in Board of Trade versus Commodity Futures Trading Commission, the Fourth Circuit in Jones versus Sears Roebuck, the Ninth Circuit in Lee versus American Express, the Eleventh Circuit in Bowen versus First Family Financial. Every time that plaintiffs have raised this sort of challenge that the inclusion of an arbitration clause violates their rights, the courts have told them you do not have standing or the case is not ripe unless and until the arbitration clause is invoked. I'm asking a specific, slightly modified question, which is you as the defendant in this case agree with my proposition that petitioners by buying that ticket has not waived their right to challenge the arbitration clause should an incident arise? We do not. We do not dispute that they could raise such a challenge. We do not believe such a challenge would be meritorious. That's a separate question. Right. In other words, you're not taking a position there is a waiver by buying the ticket. No, Your Honor. They can certainly anyone who wants to challenge an arbitration clause at any point is unconscionable or illegal can file a suit at that time. So here we have the unusual situation that the plaintiff in this case is asserting that by signing, by buying the ticket, he or she has waived his right to challenge the arbitration process should it arise. And yet the opponent says that's not true. We're not. We wouldn't claim that there is a waiver. So doesn't the case just go away? Well, Your Honor, to be clear. That's really a question not for you, but that's more of a question for the other side. Right. So it's really important to note this, that the Amtrak has said we do not take the position, we would never take the position that simply by buying the ticket, the passenger waives his or her right to challenge the arbitration at the time that it's imposed. Well, Your Honor, let me just clarify something here. Let me play devil's advocate. I understand what you're saying in response to Judge Silverman's question, but I'm a little skeptical, as I think is appellant, or appellants, that when, if ever, Amtrak invokes the arbitration clause against a claim that one of the appellants has against Amtrak, Amtrak will defend in part on the ground that you consented because you entered into this contract with us at the time you bought the ticket. And you understood that if you wanted to ride our trains, then any claim that you might have now or in the future, in some way linked to that transportation that you bought with that ticket, would be subject to mandatory arbitration by a single arbitrator under the FAA. Was that Amtrak's first line of defense? Yes, Your Honor, you're correct. And that's what I was going to clarify. Yes, so how could you respond to Judge Silverman's question the way you did? However, Your Honor, what I'm saying is that what every case has held is that for purposes of standing, unless and until the arbitration clause is invoked against the plaintiff, that person does not have any actual or imminent injury. That's what those cases were focusing on. There's no imminent injury. That's right, Your Honor, because there's at most as the cases have held a someday maybe hypothetical chance that the arbitration clause is ever going to be invoked against plaintiffs. So, for example, plaintiffs with respect to imminence have not even alleged that they have any sort of concrete plans to travel on Amtrak, let alone that they will develop a dispute with Amtrak, let alone that that dispute would then, that Amtrak would then invoke the arbitration clause against them. Excuse me, counsel, I want to just follow up on Judge Rogers' question, because it's a very good question. I recognize that if there was a dispute down the line, Amtrak would argue the arbitration clause binds the plaintiff. That's perfectly legitimate. That's different from my question, which was, would you take the position that they waived their right to challenge the arbitration clause just by buying the ticket? In other words, if they went into, if they went into court at that time saying the arbitration clause is unconstitutional, it is a statutory violation, X, Y, Z, and has fattening, whatever claims they make, you would not take the position that they waived their right to make a constitutional claim or a statutory claim by buying the ticket, would you? No, but we would likely claim that that belonged in arbitration. Right, of course you would. Of course you would. But their injury now is assertion that we would waive that claim just by buying the ticket. And I thought you correctly said, no, they wouldn't waive it. They could raise it later. They can raise it later. And as Judge Routers pointed out, we would defend against that by saying, no, this properly belongs in arbitration and you agreed to an arbitration clause. However, they have not waived their right, and that's exactly what all of these cases recognize, that in Board of Trade versus Commodity Futures Trading Commission, what they tell the plaintiff is that you can, if and when an arbitration arises, you can seek to enjoin that arbitration, and that's why you don't have standing now and it's not right now. So that's what all of these cases are saying, is that in all of the cases where plaintiffs are just sort of trying to challenge the mere inclusion of an arbitration clause, the courts say you have to wait until that arbitration clause is enforced against you. And here it's a highly hypothetical chain of events under which that arbitration clause would ever be invoked against them. As to the two plaintiffs here, Mr. Weissman, for example, on sort of plaintiff's kind of desired product theory of standing, he does not even have that type of standing because he has already traveled on Amtrak subject to the arbitration clause. Mr. Llewellyn's claims are simply that he has a new job that may require him to travel to cities that are served by Amtrak. And then I would just refer the court in terms of its questions about eminence to Mr. Llewellyn's claims themselves, which are at JA-19, where he says that when he's choosing a mode of transportation, he considers a variety of factors, including costs, travel time, schedule, and personal convenience. In some circumstances, Amtrak may be the best choice for him. And in those circumstances, he would like to be able to travel on Amtrak without being subject to an arbitration provision. So there's not even eminence as to their desired travel on Amtrak, let alone the idea that a dispute would ever arise and the arbitration clause would ever be invoked against them. All right. But counsel, how do you distinguish cases like Consumer Federation of America on that basis? So, Your Honor, I think those cases are distinguishable on a number of bases. And I would start with what Judge Rogers pointed out just as an initial matter, which is that, of course, Amtrak is not an agency and is not subject to the APA. But sort of even setting that aside and assuming for purposes of these desired product cases that they're applicable in this context, you do have to consider the injury in light of the claims asserted. And when you look at plaintiff's complaint, the claims asserted are all about their loss of a constitutional right by losing access to a judicial forum in the event a dispute arises. Their claims aren't even framed as kind of I would like to actually purchase a product and the agency has acted arbitrarily and capriciously in denying me access to that product. But even assuming, again, that their desired product theory of injury is what the injury is, as opposed to what's actually asserted in their complaint, which is the loss of an Article 3 forum for judicial redress of grievances. The Coalition for Mercury-Free Drugs case shows us that there are important limitations on even those desired product cases, which are that what the agency's action has to do is to make the product not readily available or unreasonably priced. And as both Judge Rogers and Judge Silverman were pointing out with respect to both the Orangeburg case and the Chamber of Commerce v. SEC case, what's really going on in these cases is economic injury. That's really what's motivating the court. Here, there's no kind of suggestion at all that there's any kind of economic injury to plaintiffs. There's no suggestion that what Amtrak has done by instituting an arbitration clause has made the product either not readily available to plaintiffs or unreasonably priced to plaintiffs. All right, so if they change the complaint and it said something to the effect of Mr. Weissman does not want to be forced to drive or take other transportation, I'm reading from the paragraph 8, he now says, which may be more inconvenient. But if they said if it was more inconvenient, more burdensome, more expensive, would that give them standing? I don't think so, Your Honor, and I think it goes to the questions that you were posing to Mr. Joshi, which were about any kind of limiting principle. If plaintiffs can simply allege that they would like a product to be as it is, they're simply different than as it is, there's simply no limiting principle whatsoever on their theory of standing. They've not only sort of not even alleged that travel is imminent, but the idea that they will then develop a dispute and that dispute will then Amtrak will invoke the arbitration clause against them for purposes of that dispute is simply, as the cases have said, purely speculative. It's a someday or maybe type of injury that doesn't give rise to Article III jurisdiction. Anything further? If the court has no further questions, we ask the court to affirm the disreport. Thank you. Thank you, counsel. Counsel for appellants? Thank you, Your Honor. Your Honor, first of all, not every case has held that the plaintiff must wait until arbitration. The Bowen case, which we cited in our briefs, held that if the plaintiff could claim that the arbitration condition is an unlawful condition on access to, in that case, credit, then the plaintiff has standing. I thought that case was brilliantly handled by the 11th Circuit. And they draw the distinction between two parts of the case. One part where they recognize there is standing because you have to assume the merits, even though the merits are weak. And the second part, they indicate there's lack of standing. So they follow the point that Judge Jackson made at the outset, which is you always have to ask yourself the question. You have to assume the validity of the merits when you talk about standing. And that's what the 11th Circuit did, just dividing up two parts. Now, I have a problem. The case seems to go away when your proposition is your injury is you are forced to waive the right when you buy the ticket. With that clause, you are forced to waive the right to subsequently challenge the legitimacy of arbitration when an incident arises. But you waive the right to do so. You waive the right to argue that it's unconstitutional. You waive the right that it's contrary to statute. Wait a minute, counsel on the other side says that's not true. We would never take the position you waive the right to make those legal arguments. We would make the argument that the arbitration clause is legal and you're bound by it. But we wouldn't take the position that simply by buying the ticket, you waive your right to make this argument. So in that event, where's the dispute? So that's the nub of it, though. The plaintiffs would be bound by it. If the plaintiffs win this case on the merits, they would not be bound by any arbitration. There's not a right in this case I can think of where the plaintiff is in a worse position because of the delay. But they would be here because they will be forced to enter into an arbitration agreement if they take Amtrak. But counsel, what you haven't dealt with, it seems to me, and this is simply a matter of allegations, I understand. But as Amtrak pointed out, they handle a lot of claims directly without invoking arbitration. We don't know how, if your clients have a claim sometime in the future, whether Amtrak would choose to resolve it directly or invoke arbitration. That's one major problem. Or that's two major problems. Then the third problem, it seems to me, is whether you ultimately prevail or not is a different question. But at least counsel for Amtrak has assured the court repeatedly today that it is not taking the position that the mere purchase of a ticket with an arbitration clause constitutes a waiver by your clients of their right to challenge that clause. And I understand your argument citing some cases that under the FAA, there are limited charges, limited challenges that you can make to arbitration. But the type of challenges you are arguing, namely that it's unconstitutional, that is not what I understand those cases to hold. And you haven't cited any. Well, yes, arbitration has not been used by the government against the public, so you're not going to have too many cases involving a constitutional challenge. I know you insist on referring to the government here, but at least the Supreme Court has not identified, to the contrary, it is said that Amtrak is not a government agency. The Supreme Court has twice said that Amtrak is bound by the Constitution. They are a government agency to that extent. That's correct. But when Amtrak responds to a complaint and claim that your client may have in the future, it's not acting as the government, although you keep suggesting it is. Can I ask a question, Mr. Joshi? Just I know we're short on time and I've been sitting here trying to figure out why I'm so confused by all of this. And I think it's at least conceivable that there are two different theories of injury that are floating around here. And I'm trying to understand which one you are claiming. On the one hand, you could have a theory of injury that we are injured because we do not have access to a product that we desire. And in that sense, you rely on the cases that seem to suggest that. And in that sense, the product we desire is a ticket without an arbitration clause. And all the stuff about how bad it is with respect to constitutional rights is just explaining to us why you desire to have this arbitration free, you know, this this this ticket without that clause, because all those things are terrible. But really, I'm injured because I want this product and I don't have it. All right. That's one thing. I hear Judge Silberman actually positing a different theory of injury. It is I'm injured because under these circumstances, I'm being forced to waive a constitutional right to trial. And what he or I'm being forced to waive my constitutional rights in some way. And what he's saying is, but what if what if the fact of the matter is that you're really not being forced to waive? Isn't this a frivolous case? Don't we just get rid of it on that basis? And so what are you saying? Are you actually resting on a desired products theory or on some theory related to the forced waiver of your constitutional rights? So it's the first one that the forced waiver is simply the context. But but but it's absolutely the first one. If we prevail on the merits, Amtrak would have to offer the plaintiffs here a ticket that did not have arbitration. All right. So if it's the first one. I say, but blue armrests. I say you can't be right because the person who was blue armrests as their desired product is not really injured, are they? And you then start talking about the constitutional right again and how arbitration is. So is there a difference in terms of the injury that you suffer in the desired product world based on the nature of the thing in that way? Well, I think. Well, certainly, I think this case is a lot easier than the blue armrest case because there is a contract. The plans are bound by that contract. Amtrak concedes the plans are bound by the contract. If they win, they would not be bound by that contract. But every consumer transaction involves a contract of some nature. Right. Sometimes it's written. Sometimes it's not. Amtrak could put blue armrests in its contract. So that can't be your distinction, right? Well, the blue armrest doesn't bind plaintiffs to anything. If you if the court wants to make a distinction there, that's that's one thing. But I mean, here, the contract would actually have legal effect on plaintiffs. And I take your point that maybe that gamble pays off and the plans are never hauled into arbitration. But the only time they have to make that decision is when they buy the ticket. And they don't have the opportunity later to to rethink their choice or say, well, now there's a dispute pending. I want to get out of this arbitration agreement. Except it's not what Judge Silberman says they do later. They can always say later, this is not a good thing. On the best of scenarios. What I understood, understood Judge Silberman saying is plaintiffs can raise a legal challenge in an article three court, despite all the hurdles we mentioned in our brief, and get a de novo review of whether Amtrak's condition is constitutional or not or lawful or not. But that's a legal risk. The plaintiffs, if they don't want to take that legal risk, the only thing, the only option they have is to not consent in the first place. And the only time they have to not consent is when they buy the ticket. I think we have your argument and we will take the case under advisement. Thank you. Thank you.
judges: Rogers, Jackson, Silberman